IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

WILLIAM R. SHARP,

        Plaintiff,

v.

UNITED MINE WORKERS OF AMERICA
HEALTH AND RETIREMENT FUNDS,

        Defendants.

Civil Action No. 3:18-cv-03056

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS'S MOTION FOR SUMMARY JDUGMENT

### FACTS

Plaintiff does not assert any additional material facts in his Response.

It is unclear what, if anything, is disputed about Trustees' Fact No. 41 (noted to be a disputed material fact by Plaintiff). Also, Plaintiff asserts that Trustees' Facts Nos. 116 through 119 describing the Trustees' explanation for denial are disputed, material facts. However, the fact that the Trustees provided the explanation described in these paragraphs is undisputed. Plaintiff's issue is whether the Trustees' decision described therein was reasonable, which is the legal matter at hand. In fact, Plaintiff repeatedly uses the Fact portion of his Response brief to argue the legal merits of his case, rather than to respond appropriately to the Trustees' facts. For example, pages 20-24 are clear legal argument, with citations to case law, and should be stricken from Plaintiff's Response for not being contained within the Argument section.

# ARGUMENT

A. <u>The Causation Standard for a Disability Pension has been Established for Decades.</u> As explained in pages 9-14 of the Trustees' Response Brief, a mine accident must be "substantially responsible" for an SSDI disability to receive a disability pension under the 1974 Pension Plan ("the Plan"). As stated by the Fourth Circuit, "if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job…then his total disability results from a mine accident. *Robertson v. Connors*, 848 F.2d 472, 475 (4th Cir. 1988). This causation standard has also been followed by the Sixth and Eleventh Circuits. *See Wayton v. UMW Health & Ret. Funds*, 568 Fed. Appx. 738, 741 (11th Cir. 2014); *Green v. Holland*, 480 F.3d 1216, 1219, 1227 (11th Cir. 2007); *Ball v. Holland*, 142 Fed. Appx. 860, 863 (6th Cir. 2005). Plaintiff argues that *Cerentano v. UMWA Health and Ret. Funds*, 735 F.3d 976 (7th Cir. 2013), supports using a causation standard of whether there was a "causal link" between the mine accident and the SSDI award. However, in discussing the causation standard, the *Cerentano* court merely reasoned that the applicable Plan language was ambiguous and, therefore, the Trustees' interpretation was entitled to deference. *Id*. at 981. To determine the Trustees' interpretation, the *Cerentano* court looked only to language in the Trustees' explanation for denial and found the words "causal link." *Id*. Relying solely on *Cerentano* for the Plan's causation standard is improper. For decades, a participant has been eligible for a disability pension under the Plan if a mine accident, whether in combination with a previous or subsequent condition, was substantially responsible for his total disability. This was established by courts and by the Trustees' own interpretation in DP-1(81), which was not discussed in *Cerentano*. DP-1(81) was promulgated by the Trustees and sets forth the standard to be applied when two conditions combine to result in total disability. It provides that the condition which resulted from a mine accident must have "contributed

2

substantially to the total disability." (Ex. 1, Pl. Resp. Br.). Finally, unlike in *Cerentano*, the explanation for denial in the present case specifically provided the Trustees' interpretation of the Plan language by stating, "[f]or these reasons, it would not be reasonable to conclude that the 2003 mine accident *caused or significantly contributed* to his total disability as defined by Social Security." (A.R. 410) (emphasis added). Applying the incorrect causation standard, as Plaintiff would have the Court do, would disregard not only the Trustees' permitted interpretation of the Plan, but also the holdings of the Fourth, Sixth and Eleventh Circuits.[1]

B.  <u>Plaintiff Purposively Omitted Material Medical Records, Reports and Depositions.</u> The following documents are described within the Administrative Record but were not submitted by Plaintiff during the administrative process:

- Medical records prior to the date of the mine accident pertaining to Plaintiff's degenerative back condition, related radicular pain, and prior back injuries. (A.R. 69, 346, 349, 352, 355).
- The cross and re-cross of Drs. Mack and Chapa's depositions. (A.R. 346-347, 349-350).
- Plaintiff's first appointment with Dr. Mack on January 20, 2004 (one month following the mine accident) wherein he diagnosed Plaintiff with "degenerative disc at L3-4 and L4 nerve root irritation, where nerves go down in to the lower legs..." (A.R. 342-343).
- Dr. Bansal's January 28, 2004 record diagnosing Plaintiff with lumbar strain. (A.R. 343).
- The Dr. Mack appointment on January 30, 2004 wherein he diagnosed Plaintiff with degenerative disc disease with lumbar spinal stenosis and foraminal stenosis (A.R. 343).
- Plaintiff's appointment with Dr. Mack on March 19, 2004 wherein he diagnosed Plaintiff with spinal stenosis L4-5 with radicular pain (A.R. 344).
- Plaintiff's appointment with Dr. Mack on April 7, 2004 wherein he noted that Plaintiff needed a bilateral decompression and diagnosed Plaintiff with L4-5 spinal stenosis with radicular pain and degenerative changes with foraminal stenosis. (A.R. 344).
- Dr. Van Fleet's report on April 23, 2004 to Dr. Mack describing that Plaintiff had low back and extremity pain "for some time," describing a pre-mine accident discogram, and recommending a bilateral laminotomies at L3-4 and L4-5. (A.R. 344).
- A lumbar MRI performed on October 12, 2004 that showed a mild diffuse disc bulge at L4-5 and that prior stenosis had been relieved by surgery. (A.R. 350).
- Dr. Leventhal's May 11, 2005 deposition. (A.R. 351-352).
- Dr. Leventhal's report based on his March 17, 2005 evaluation. (A.R. 351-352).

---

[1] Plaintiff cites to Illinois state law for a causation standard. (Pl. Resp. Br. ¶ 42). However, the Plan language, Trustees' interpretations, and relevant federal common law all clearly preempt any state law.

3

The Trustees relied on the descriptions of these documents, along with the additional supporting evidence discussed within the Trustees' MSJ and Response briefs, as substantial factual evidence in support of the Trustees' decision. Plaintiff argues that these facts are mere "excerpts" or "partial statements" or are immaterial because they are taken from Plaintiff's prior Workers' Compensation decision (Pl. Resp. Br. ¶ 30-36, 38). However, it is disingenuous for Plaintiff to argue that the Trustees must not rely on this information when the Trustees do not have the complete or original documents because Plaintiff chose to omit them. Incredibly, in response to the Trustees citing the Workers' Compensation decision's description of Dr. Mack's cross deposition testimony, Plaintiff countered "the best evidence is Dr. Mack's deposition itself" and cited to the deposition he submitted to the Trustees *with the cross testimony omitted*. (Pl. Resp. Br. ¶ 33). This selective submission of proof spotlights the Plaintiff's attempt to hide the considerable evidence demonstrating that the mine accident did not substantially cause or contribute to Plaintiff's SSDI disability. If the Court believes it is imperative for the Trustees to view the originals of these records, rather than relying on the descriptions within the Workers' Compensation decision, then the case should be remanded to the Trustees with Plaintiff being ordered to submit these records for the Trustees' review. Plaintiff also argues that any evidence pertaining to his degenerative diagnoses is immaterial. (Pl. Resp. Br. ¶ 26-33, 38). These facts are clearly material and directly relevant, because they support the conclusion that the overwhelming cause for his SSDI award was his degenerative back condition, which had been progressing for years prior to the mine accident, continued to progress after the mine accident, and was the reason for his surgeries. They directly demonstrate that the mine accident did not substantially contribute to Plaintiff's SSDI disabilities.

C.      <u>The Trustees are not Bound by Workers' Compensation Decisions.</u> Plaintiff implies that

it is unreasonable for the Trustees to rely on the Social Security Administration's ALJ decision and not the Workers' Compensation decision. (Pl. Resp. Br. ¶ 48). Plaintiff ignores the fact that the Plan specifically incorporates a participant's SSDI eligibility, which makes the ALJ decision directly on point. (Def. Br. Ex. B at 5). Workers' Compensation standards are not afforded the same weight. The Third Circuit, in discussing the same benefit and the same Plan language, agreed with this approach stating that Workers' Compensation benefits are of little significance, because Workers' Compensation standards are not incorporated into the Plan. *Moats v. United Mine Workers of America Health & Retirement Funds*, 981 F.2d 685, 689 (3rd Cir. 1992). Essentially, Plaintiff's Response brief demands that the Trustees rubber stamp the Workers' Compensation decision. (Pl. Resp. Br. ¶ 48-49). That is not what the Plan or the law requires, which is detailed more fully in the Trustees' MSJ and Response briefs. (Def. Br. ¶ 34; Def. Resp. Br. ¶ 22-23). *See also Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 529 (7th Cr. 1986) ("Workers' compensation law does not govern the determination of disability benefits under a private pension plan").

D.     Substantial Evidence within the Administrative Record Supports the Trustees' Decision.

It is impossible to respond to all the inaccuracies and inconsistencies in Plaintiff's Response brief within this Reply's page limit. Ultimately, the record contains substantial evidence supporting the Trustees' determination. This evidence includes the following:

- The SSA disability onset date is over three years after the mine accident. (A.R. 87).
- Plaintiff continued working for over three years after the mine accident (only ceasing work at the mine because he was terminated and then continuing his job as a self-employed electrician with frequent heavy lifting). (A.R. 220, 222).
- Plaintiff did not seek medical treatment related to his back condition or make any complaints of back or extremity pain from September 14, 2005 to January 25, 2007.
- Plaintiff had a long history of a degenerative back disorder with radiculopathy prior to the mine accident. (A.R. 69, 93, 346, 349, 352, 355).
- Dr. Mack's diagnoses leading up to the May 10, 2004 surgery were all degenerative conditions: January 20, 2004 – degenerative disc at L3-4 and L4 nerve root irritation; January 30, 2004 – degenerative disc disease with lumbar spinal stenosis and

5

- foraminal stenosis; March 19, 2004 – spinal stenosis L4-5 with radicular pain; April 7, 2004 – L4-5 spinal stenosis with radicular pain and degenerative changes with foraminal stenosis. (A.R. 342, 343, 344, 347).
- December 2003 x-rays showed that Plaintiff's degenerative changes had progressed so that they impinged on the nerves in his back. (A.R. 350).
- A January 5, 2004 MRI revealed significant foraminal stenosis secondary to disc bulge, ligamentous hypertrophy and facet arthropathy at L4-5 and degenerative changes with small central disc bulge at L5-S1. (A.R. 269).
- Dr. Van Fleet removed degenerative bony growth that had been occurring for years and degenerative ligamentum flavum during the May 10, 2004 surgery, demonstrating the surgery was to relieve stenosis. (A.R. 347).
- Dr. Leventhal opined that the May 10, 2004 surgery was not necessitated by the mine accident but was necessitated by Plaintiff's spinal stenosis. Dr. Leventhal noted that the mine accident could have caused a temporary increase in low back pain but could not have aggravated the spinal stenosis. (A.R. 351).
- An October 12, 2004 lumbar MRI showed a mild diffuse bulge at L4-5, which Dr. Chapa opined was usually a degenerative finding, and that the prior stenosis at L4-5 had been relieved by surgery. (A.R. 350).
- Dr. Mack opined that Plaintiff's foraminal stenosis was the result of degenerative disease and EMG results showed a nerve problem from prior to December 16, 2003. (A.R. 347). He noted that Plaintiff's mine accident injury would not cause a permanent exacerbation. (A.R. 375).
- In February 2005, when Dr. Mack recommended a repeat decompression and possible fusion, he gave a diagnosis of degenerative disc with foraminal stenosis. (A.R. 144).
- The progression after the mine accident from mild right L5 and S1 radiculopathy in an EMG on February 11, 2004 to moderately severe right L5 radiculopathy in an EMG on February 6, 2007. (A.R. 269, 159).
- In January 2007, Dr. Mack noted that x-rays showed a great deal of degenerative changes. (A.R. 145).
- A February 2, 2007 MRI showed mild diffuse disc bulges and facet arthritis at L4-5 and mild diffuse bulge at L5-S1 with possible moderate spinal canal stenosis and foraminal narrowing. (A.R. 146).

This is clearly not a "selective use of evidence" as Plaintiff argues. (Pl. Resp. Br. ¶ 44). If a trustee's decision is supported by substantial evidence, the reviewing court must sustain that decision even if the court concludes that substantial evidence also supports a contrary result. *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619-20 (1966); *Sargent v. Holland*, 925 F. Supp. 1155, 1159 (S.D. W. Va. 1996). The Trustees respectfully submit that their decision is supported by substantial evidence and must be sustained.

Respectfully submitted,

s/Abigail A. Petouvis
ABIGAIL A. PETOUVIS
Assistant General Counsel
UMWA HEALTH & RETIREMENT FUNDS
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C. 20037
Telephone: 202-521-2357
apetouvis@umwafunds.org

s/Greg Campbell
GREG CAMPBELL
Greg A. Campbell, MO 35381
Hammond and Shinners, PC
7730 Carondelet, Ste 200
Clayton, MO 63105
(314)727-1015
gcampbell@hammondshinners.com

s/Emily R. Perez
EMILY R. PEREZ
Emily R. Perez, MO 62537
Hammond and Shinners, PC
13205 Manchester Road, Ste. 210
St. Louis, MO 63131
Telephone: 314-727-1015
eperez@hammondshinners.com
COUNSEL FOR DEFENDANTS

**Certificate of Service**

I hereby certify that on November 13, 2018, the foregoing was filed electronically with the court and served via the ECF filing system to all participating parties.


/s/ Emily R. Perez